The injunction in this State possesses the same effects and qualities precisely as the injunction in England. There has been no act of Assembly to give it different effects or qualities. Also the case cited for the plaintiff about the entirety of an execution are good law; still it seems to me the sheriff acted properly in redelivering the goods. The apothegm that an execution is an entire thing, and cannot be stopped when once begun to be executed, contains no reason in itself, and is not accompanied by any in the books cited that shows why the law is so. It becomes necessary, then, to search for the reason, and to discover it, in order to understand how far it extends and to what cases it is properly applicable. One of the books this moment cited, since I began to speak, says an injunction shall stay the goods in the hands of the sheriff. Admitting it to be so, that proves the rule about the entirety of an execution to be applicable to the case of an injunction; for by the rule it is necessary to proceed and sell. If we discover that the reason of the rule is not universal, and reaches only to particular cases, the universality of the terms in which it is conceived must be restrained to those cases. When the plaintiff obtains judgment and takes out execution, the law still allows the defendant to have the cause further examined, and provides various means of doing so, suited to each particular case of hardship; as by supersedeas, writ of error, certiorari, etc. But (84) in granting this indulgence, it were unjust to place the plaintiff in a worse situation than he stood in at the time the supersedeas, writ of error, etc., issued. If he has gained a security for his debt by a seizure to the value, that shall not be taken from him without giving an equal or better security; and as no such security was given at the common law, of which this is a rule, prior to issuing the supersedeas, writ *Page 95 
of error, etc., the goods when seized were to be retained in the hands of the officer or sold; and it would be vastly inconvenient to all parties that they should be retained in the hands of the officer, for if perishable, they may be destroyed in the interim; if living animals, they may be fed; or if inanimate, may require a warehouse. By destruction, the value is lost to the plaintiff or defendant; and so it is if the expenses eat up the value. It is better for all parties that they be sold; and it is for that reason that the law orders a sale, notwithstanding a supersedeas or other writ in the nature of a supersedeas, which issues at the common law without any security previously given. Hence arose the quaint saying that an execution is an entire thing, and cannot be stopped when once begun to be executed, the reason of it extends to no case where a security equal to the seizure is given by the defendant before he obtains process for a stay of proceedings. Will it then apply to the case of injunction? In England, when an injunction issues after verdict and before execution, the money must be deposited. Cursus Concellariae, 447. If after execution has issued the money and costs recovered at law must first be paid into the court of equity. Cursus Concellariae, 448; 2 Brown Ch., 14, 182; Ch. C., 447. We must not look into the old books for the properties of an injunction; the writ itself is but of modern origin, and like other things, has been matured and fitted for the transactions it is used in, and has but lately acquired perfection. When money is deposited, it is unjust to retain the goods any longer, and it is unnecessary to the plaintiff's security. Much more unjust would it be to proceed to a sale. Hence it is deducible that the goods are to be redelivered; and if this be the effect of an injunction, issued after a verdict in England, the next question is, Has any law or established practice altered such effect in this State? There is no act of Assembly for that purpose, and the practice before the revolution, and for five years last past, has been either to deposit the money or give security to pay the debt in case of a dissolution, according as the circumstances stated were more or less favorable for the complaint. The proceedings of the old court of chancery in this country have been inspected, and they prove the practice to have been as I state it. But why require a bond if the goods are to be retained; if they are to be sold, notwithstanding the injunction, and if the defendant is absolutely discharged by a seizure to the (85) value? The plaintiff cannot possibly have any cause of complaint for which he may sue upon the bond; he has the full benefit of the seizure and of the security detained by it. It follows that either the bond is filed for no purpose or that the goods are to be redelivered; and it is more reasonable to presume the latter than the former — the more so, seeing the universal practice has been to redeliver the goods, which, though it may not make the law, is evidence in a doubtful case of what *Page 96 
it really is; and as our act of 1802 directs the proceedings in our present court of equity to be like those in the court of chancery under the old government — upon this view of the subject, the defendant acted rightly in redelivering the goods to Walk. It is indeed a misfortune which occasions this dispute — the money not having been deposited nor security given before the injunction issued. That is not the fault of the defendant, who was bound to obey the writ without inquiring whether all necessary steps were taken before it issued. As to the book which says the injunction shall stay the goods in the hands of the sheriff, it is an old authority. There is no fee allowed by law to the sheriff for such service, the position is against first principles, for the goods may perish or incur an expense in the keeping. It is more agreeable to principles that they should be sold; and if they must be sold, the injunction is a dead letter. The property of the goods is not absolutely divested out of the defendant by seizure, for if the money be paid, he shall have them again; and that is done by a deposit. And as in this country, owing to the circumstances stated by the defendant's counsel, a bond is in some instances substituted in the place of a deposit — a security instead of satisfaction. The effect of an injunction in both cases is the same; but in the latter, after a dissolution, an execution de novo may issue, for the defendant is absolutely discharged by a seizure where he is passive, and does no act to obstruct the consequences of a seizure; but where, by his own act and at his own instance the goods are released upon an allegation made by himself that he is not chargeable, it is no hardship upon him when upon further scrutiny it turns out that his allegation is not true. If he is subjected by a new writ, the constant practice in this State has been in such cases to issue a new fi. fa. after a dissolution, and not a venditioni exponas ordistringas against the sheriff who seized.
Verdict for the defendant.
NOTE BY REPORTER. — This case happened some years ago in the district of Halifax: The defendant, whose name, I think, was Robinson, was taken and imprisoned upon a ca. sa. and then obtained an injunction and was discharged; and though the plaintiff's debt became desperate, and was actually lost by the discharge, as well as I recollect, no advice was (86) given to sue the sheriff. This case happened in the district of Salisbury, eight or nine years ago: A defendant's goods were taken in execution, then an injunction issued; the goods were released, and the defendant immediately removed himself and his effects to Georgia, and no one advised the suing the sheriff; then the injunction was dissolved, and no property to be found. About six or seven years ago, at Salisbury, this case happened; The sheriff of Rockingham (Mr. Joyce, as well as I remember) was indicted because, having taken the defendant in execution, who afterwards exhibited a bill and procured a judge's fiat for an injunction, and showed *Page 97 
that to the sheriff on the day of sale, not having time to go to the office of the clerk and master: the sheriff, supposing the fiat not sufficient, had proceeded to sell; and for this conduct both he and the plaintiff were convicted of trespass and fined, two judges being present, as well as I remember. Numberless cases have occurred where the goods have been redelivered, and where afterwards new executions issued. Were all such cases illegal, and the plaintiffs liable to be sued or to make restitution? And must the sheriffs in all such cases be resorted to? Or are they still liable in all cases to be resorted to where the goods have been redelivered, and afterwards none to be found — notwithstanding the general opinion hath been hitherto that they did but their duty in making redelivered and were no ways responsible afterwards? If so, the lawsuits to arise from this source are innumerable and the effects inculculable [incalculable].
NOTE. — It was attempted to defend the sheriff on another ground, namely, that the bill of costs annexed to the execution contained some abbreviated words and that therefore he ought not to have executed the writ. The words of 1784, ch. 7, sec. 8 are: "and to the said execution shall be annexed a copy of the bill of costs, of the fees on which such execution shall issue, wrote in words at length, without any abbreviation whatsoever; and all executions issuing without the copy of such bill of costs annexed shall be deemed illegal, and no sheriff shall serve or execute the same."